# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ANDREW K. O'HAZO,

        Plaintiff,

v.                                      Case No:   6:21-cv-1010-PGB-LHP

SECRETARY, DEPARTMENT OF
DEFENSE,

        Defendant

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 67)**
>
> **FILED:   April 3, 2023**
>
> ---
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART.**

## I.   BACKGROUND AND PROCEDURAL HISTORY

On June 14, 2021, Plaintiff Andrew K. O'Hazo ("Plaintiff"), proceeding *pro se*, filed a "Complaint for Employment Discrimination" against Defendant Lloyd J.

Austin, III, in his capacity as the Secretary of the Department of Defense ("Defendant"), alleging unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA").   Doc. No. 1.   On May 24, 2022, the Court dismissed the complaint without prejudice as an improper shotgun pleading, and afforded Plaintiff leave to amend.   Doc. No. 36.   *See also* Doc. No. 35.   And on November 17, 2022, the Court dismissed Plaintiff's amended complaint without prejudice, finding it again constituted an impermissible shotgun pleading, and provided Plaintiff another opportunity to replead.   Doc. No. 49.   *See also* Doc. No. 46.

On December 9, 2022, Plaintiff filed his "Second Amended Complaint for Employment Discrimination," which is the operative pleading in this case.   Doc. No. 50.   In the second amended complaint, which is in "check the box" format, Plaintiff alleges claims against Defendant under Title VII based on Plaintiff's gender/sex (male), and under the ADEA based on his age (date of birth 1948).   *Id.*, at 3-4.   He asserts discriminatory conduct in the form of failure to hire, termination of employment, failure to promote, unequal terms and conditions of employment, retaliation, and "Constructive Discharge/Constructive Dismissal, Reprisal, Harassment."   *Id.*, at 4.   Plaintiff further alleges that he filed a charge with the

Equal Employment Opportunity Commission ("EEOC") on February 14, 2020, and that he was issued a Notice of Right to Sue letter on March 15, 2021.   *Id.*, at 5.

Attached to the second amended complaint is a document consisting of a two-page "statement of facts," and another eight (8) pages that purports to list four (4) claims for relief:   (1) hostile work environment gender discrimination under Title VII (Count I); (2) adverse action and constructive termination under the ADEA (Count II); (3) retaliation under Title VII (Count III); and (4) a combined claim of retaliation, hostile work environment, and constructive termination under the ADEA (Count IV).   Doc. No. 50-1.   Plaintiff also attaches a "Decision on Request for Reconsideration" from the Equal Employment Opportunity Commission ("EEOC").   Doc. No. 50-2.   In terms of relief, Plaintiff seeks any and all damages available under Title VII and the ADEA, including back pay, front pay, compensatory damages, prejudgment interest, and attorneys' fees and costs.   Doc. No. 50-1.

Defendant answered the second amended complaint.   Doc. No. 51. Following the close of discovery, Defendant timely filed the above-styled motion for summary judgment, along with 17 exhibits in support.   Doc. Nos. 67-68.[1]

---

[1] On Defendant's motion, the undersigned permitted Defendant to file the exhibits to the motion for summary judgment on a physical CD, which Defendant provided to the Clerk's office, and which the undersigned has reviewed and utilized in drafting this report. *See* Doc. Nos. 66, 68.

Plaintiff has filed a timely response in opposition, along with two exhibits.   Doc. No. 69.   Although Defendant was afforded leave to file a reply, *see* Doc. No. 55, at 8, Defendant did not.   Thus, the motion is fully briefed, and has been referred to the undersigned for consideration.

For the reasons discussed below, the undersigned will respectfully recommend that the motion for summary judgment be granted as to Plaintiff's constructive discharge claim and denied on all other grounds.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a party may move for summary judgment on any claims or defenses, or on the part of any claims or defenses.   Fed. R. Civ. P. 56(a).   A court may only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   *Id.*   The moving party bears the initial burden of "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment.   Fed. R. Civ. P. 56(c)(1)(A).   "The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists."   *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

While the court "need consider only the cited materials" when resolving a motion for summary judgment, the court is also free to consider other materials in the record.   Fed. R. Civ. P. 56(c)(3).

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the Court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor.  *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). However, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).   However, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment."  *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Although courts show leniency to *pro se* litigants, courts "will not serve as de facto

counsel or 'rewrite an otherwise deficient pleading in order to sustain an action.'"

*Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 298 (11th Cir. 2009) (quoting *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).[2]   *Pro se* litigants are still "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989), *cert. denied*, 493 U.S. 863 (1989).

## III.    UNDISPUTED MATERIAL FACTS[3]

---

[2] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1354 n.7 (11th Cir. 2007).

[3] Other than attaching two orders relating to the exhaustion of his administrative remedies, Plaintiff has not submitted any evidence to support his opposition to summary judgment.   Doc. No. 69.   On the other hand, Defendant has submitted over 2,000 pages of documents in support of its motion, which as discussed above, have been submitted on a CD to include Exhibits A through Q.   *See* Doc. No. 68.   Unfortunately, Defendant's citation to his own record is confusing and frequently incorrect.   For example, Exhibit A appears to be the entire 1,216-page investigative file for some of Plaintiff's claims. Defendant cites to this exhibit using "ROI at pg. ___", but the exhibit itself nowhere uses this abbreviation, Defendant does not explain what "ROI" stands for, and the bates numbers listed on Exhibit A do not coincide with any page numbers Defendant refers to in his motion.   In addition, Defendant frequently cites to the wrong bates number pages for the other exhibits.   In sum, the undersigned has been unable to rely on any of Defendant's citations in his motion, and has often been forced to do Defendant's work in culling through the thousands of pages provided to figure out exactly what Defendant is referencing, resulting in a waste of judicial resources.   For purposes of this report, citation to the CD exhibits submitted by Defendant will be provided in the following format: "Exhibit ___, DEF___," with "DEF___" referring to the bates number provided on the bottom, righthand corner of the documents.

As discussed below, Plaintiff has lodged objections to all but one of Defendant's exhibits.   Doc. No. 69.   However, Plaintiff's objections are due to be overruled; therefore, the undersigned has considered the entirety of the record provided by the parties in assessing the undisputed materials facts.

A.     *Plaintiff's Employment with Defendant*

Plaintiff Andrew K. O'Hazo is a male, with date of birth July 10, 1948. Exhibit B, DEF001070.   He commenced work with the United States Department of Defense, Defense Contract Audit Agency ("DCAA") on May 20, 2012 as an Auditor, GS-11.   *Id.*, DEF001086-DEF001087.   DCAA audits procurement offices of the Department of Defense ("DOD") and/or non-DOD agencies to assist with auditing or negotiating new government contracts.   DCAA audits typically have three phases: (1) risk assessment; (2) audit field work; and (3) preparation of the final audit report.   Auditors have deadlines and budgets for hours expended at each phase of the process.   *See id.*, DEF001088-DEF001090.   *See also* Doc. No. 67, at 2-3.

Plaintiff first worked as an Auditor for DCAA out of their Evandale, Ohio office.   Exhibit A, DEF000128.   In 2013, while working in Ohio, Plaintiff filed a formal Equal Employment Opportunity ("EEO") complaint of age and gender discrimination with the DCAA, which was ultimately resolved.   *See id.*, DEF000347-DEF000507.   *See also id.*, DEF000114.[4]   In February 2015, DCAA promoted Plaintiff to Senior Auditor, GS-12.   *See id.*, DEF000128; Exhibit B,

---

[4] Because at all relevant times Plaintiff was an employee of a federal agency, any claims of employment discrimination, harassment and/or retaliation are governed by a specific federal regulatory scheme, which establishes an agency investigation and decision process, followed by an appeals process to the Equal Employment Opportunity Commission, and/or an avenue for filing a lawsuit in federal court.   *See* 29 C.F.R. § 1614.101, *et seq.*

DEF001091-DEF001092.   On Plaintiff's request, on March 6, 2016 the DCAA reassigned him to the Melbourne, Florida office, which is part of the DCAA's Central Region.   Exhibit A, DEF000128.   *See also* Exhibit B, DEF001108.

As alleged in Plaintiff's Second Amended Complaint, he complains of various incidents that commenced in October 2017 and lasted through his termination on September 23, 2019.   Doc. No. 50-1, at 1-2.   During this time frame, Plaintiff's direct supervisor changed on several occasions.   In 2017, his supervisor was Donald Marn, in 2018, his supervisors were Allison Adams and Norman Swarts, and in 2019 he was supervised by both Michelle Ramsey and Candace Breedon.   At all relevant times, the Regional Special Programs Manager was Angela Moomand.   *See* Exhibits F-I.

Plaintiff first contends that at some point in October 2017 through September 23, 2019, his supervisors prohibited him from submitting requests to the Information Technology (IT) Help Desk, and/or reprimanded him for making too many help desk requests.[5]   Doc. No. 50-1, ¶ 7.   *See also* Exhibit A, DEF000876-DEF000877.   There is no evidence that Plaintiff was otherwise disciplined for these requests, or that he ceased requesting assistance from IT, and Plaintiff was unaware

---

[5]   The record before the undersigned demonstrates that Plaintiff regularly submitted requests for IT assistance, and that his supervisors encouraged employees to contact the Help Desk.   *See, e.g.,* Exhibit A, DEF000600-DEF000633, DEF000640-DEF000647, DEF000663-DEF000671, DEF000674, DEF000902, DEF000932-DEF000933, DEF000999-DEF001000; Exhibit D, DEF001334.

whether any other similarly situated employees were treated differently.   Exhibit B, DEF001172-DEF001176.   *See also* Exhibit A, DEF000661, DEF000878-DEF000879.

Next, Plaintiff claims that in October 2017, his then-supervisor Donald Marn attempted to bully Plaintiff into retiring.   Doc. No. 50-1, ¶ 8.   According to Plaintiff, Marn informed Plaintiff that Marn was retiring, that things were "changing" at the DCAA, and that Plaintiff was also old enough to retire.   Exhibit B, DEF001150-DEF001152.   Plaintiff did not retire at that time, and there is no evidence that Plaintiff was subjected to any other discipline or adverse action related to Marn's statements.[6]   Moreover, on May 16, 2018, Marn issued Plaintiff his performance appraisal for the 2017-2018 appraisal period, in which Marn rated Plaintiff as "fully successful" in all areas.[7]   Exhibit C, DEF001209-DEF001217.

Marn retired in June 2018, and Allison Adams became Plaintiff's interim supervisor.   Exhibit I, DEF001641.   Over the next several months, Adams found Plaintiff's performance on an Incurred Cost audit for Telecommunication Support Services, Inc., ("TSSI Audit") to be lacking – he did not complete the audit on time

---

[6]   During the DCAA's internal investigation of Plaintiff's discrimination, harassment, and retaliation claims, Plaintiff stated in a declaration that Marn also told Plaintiff that management wanted Marn to put Plaintiff on a Performance Improvement Plan, but Marn refused.   Exhibit A, DEF000879-DEF00880.

[7]   Performance appraisals run from the time period April 1 through March 31, and have three levels of ratings:   outstanding, fully successful, and unacceptable.   *See, e.g.*, Exhibit C, DEF001209-DEF001217.   *See also* Exhibit K.

or within the budgeted hours, he did not notify Adams in advance that he would not complete the audit as scheduled, he did not perform sufficient work on the risk assessment portion of the audit, his work paper documentation was deficient, and he had excessive charges to the "Other Indirect Charge" time code.   Adams and Plaintiff communicated about these issues both in person and via email.   *See, e.g.,* Exhibit A, DEF001011-DEF001021; Exhibit D, DEF001317, DEF001319-DEF001331; Exhibit I, DEF001642.   *See also* Exhibit A, DEF001040.

On October 2, 2018, Adams met with Plaintiff to conduct a progress review, and issued Plaintiff an interim performance evaluation, in which she rated Plaintiff as "unacceptable" in the areas of "audit planning and approach," "audit performance," and "documenting and reporting results."   Doc. No. 50-1, ¶ 9; Exhibit D, DEF001263-DEF0001266; Exhibit I, DEF001643.   Adams also notified Plaintiff that his ratings of "unsuccessful" on his interim evaluation would result both in a Performance Improvement Plan ("PIP") and the revoking of Plaintiff's telework agreement.   Exhibit D, DEF001264; Exhibit I, DEF001643.[8]   Adams drafted a PIP for Plaintiff, but it was determined that the PIP would not issue until

---

[8]   DCAA policy provides that only employees who maintain the required performance for all critical job elements at least at a fully successful level and maintain acceptable conduct are eligible for teleworking.   Exhibit L, DEF001650-DEF001651.

a permanent supervisor was assigned to Plaintiff.   Exhibit D, DEF001291-DEF001308; Exhibit G, DEF001634; Exhibit H, DEF001638, Exhibit I, DEF001643.

Shortly after Adams issued the interim performance evaluation, Norman Swarts became Plaintiff's temporary supervisor.   Exhibit H.   On October 24, 2018, Plaintiff asked Swarts for a new telework agreement, and on November 6, 2018, Swarts notified Plaintiff that he would not be authorized to telework until his performance was brought up to the "fully successful" level.   Exhibit D, DEF001262; Exhibit H, DEF001638.   Plaintiff also testified that in November 2018, Swarts sent him a series of inappropriate emails in which Swarts warned Plaintiff "don't be a hero," that on one occasion Swarts turned off Plaintiff's computer without Plaintiff's permission, and Swarts either turned the temperature up by Plaintiff's cubicle or reassigned Plaintiff to a cubicle that was located in an intemperate area of the office.   Exhibit A, DEF001043-DEF001044; Exhibit B, DEF001139-DEF001142. In addition, Plaintiff testified that Swarts once called Plaintiff "old man" in a meeting, and that Swarts refused to schedule regular weekly meetings with Plaintiff.   Exhibit B, DEF001141.

On December 10, 2018, Candace Breeden became Plaintiff's permanent supervisor.   On January 10, 2019, Breeden conducted a progress review with Plaintiff, and placed Plaintiff on a PIP, with a 90-day period to improve.   Exhibit

C, DEF001219; Exhibit E, DEF001569-DEF001571.[9]   During the 90-day period, Breeden met with Plaintiff weekly to discuss how he could improve his work performance.   Exhibit E, DEF001573-DEF001626.   Unfortunately, Plaintiff's performance did not improve, and on June 27, 2019, Breeden notified Plaintiff that his performance remained unacceptable.   *See, e.g.*, Exhibit A, DEF000137.

On July 29, 2019, DCAA Branch Manager Michelle Ramsey reviewed Plaintiff's work performance and personnel file and issued Plaintiff a Proposal to Remove letter based on his unacceptable performance.   Exhibit A, DEF000077-DEF000091, DEF000219-DEF000233; Exhibit G, DEF001634.   *See also*, Doc. No. 50-1, ¶¶ 12-13.   Plaintiff was given an opportunity to respond, which he did in writing and orally to Regional Special Programs Manager Angela Moomand.   Exhibit F, DEF001630.   Moomand reviewed Plaintiff's record, and on September 23, 2019, she made the final decision to terminate Plaintiff's employment and issued to Plaintiff a Decision to Remove for Unacceptable Performance.   Exhibit A, DEF000092-DEF000095, DEF000234-DEF000237; Exhibit C, DEF001228; Exhibit F, DEF001629-DEF001630.[10]

---

[9] Plaintiff testified that between 10-20% of the statements on the PIP were correct, but did not provide any further details beyond claiming that he was not the only employee to have computer problems.   Exhibit B, DEF001145-DEF001148.

[10] From the record submitted by Defendant it appears that Plaintiff received another performance appraisal from Breeden on September 13, 2019, which again rated Plaintiff as "unacceptable" in the areas of "audit planning and approach," "audit performance," and "documenting and reporting results."   Exhibit C, DEF001219-

That same day, Plaintiff met with representatives of the DCAA and was given the option to elect retirement rather than removal, which he initially agreed to, but he revoked the agreement on September 30, 2019.   Exhibit A, DEF000096-DEF000100, DEF000238-DEF000242; Exhibit B, DEF001159-DEF001163.   Plaintiff testified at his deposition that he felt coerced into signing the agreement in order to keep his insurance benefits, but provided no further details, and admitted that he revoked the agreement.   Exhibit B, DEF001159-DEF001163.   Thus, Plaintiff's status as of the date of this report remains "terminated."

The DCAA submitted documentation to Plaintiff on or about December 17, 2019, which provided information about his insurance benefits.   Doc. No. 50-1, ¶ 17.   According to Plaintiff, he completed his retirement paperwork on September 23, 2019, but the DCAA never processed it.   *See* Exhibit A, DEF000101-DEF000112.[11]   Plaintiff testified that in mid-January 2020, he discovered that his health insurance benefits had been canceled, but after he complained, DCAA reinstated them.   Exhibit B, DEF001159-DEF001163.   *See also* Exhibit A, DEF000881-DEF000882.   Plaintiff is also receiving approximately $8,000 per year in pension benefits from DCAA.   Exhibit B, DEF001177-DEF001180.

---

DEF001226.   Plaintiff declined to sign the performance appraisal.   *Id.*

[11] While not entirely clear, it appears Plaintiff believed that even though he revoked his agreement with the DCAA, he would still be able to retire versus have his employment terminated.   *See, e.g.,* Exhibit A, DEF000113.

Plaintiff testified that he believed all of the above-described actions were taken against him due to his age and gender and were also retaliation for his 2013 EEOC activity and the fact that Plaintiff held the position of union steward and/or union representative at various points in time.   Exhibit B, DEF001137-DEF001144; Exhibit A, DEF000883.   *See also* Doc. No. 50-1, ¶ 5.   In addition, during the 2017-2019 time period, and beyond, Plaintiff applied for at least 30 different positions with the DCAA at various offices around the United States.   This included a position for Auditor, GS-0511-07/11 located in Melbourne, Florida, that Plaintiff applied for on December 24, 2019.   Doc. No. 50-1, ¶ 6; Exhibit A, DEF000030. Plaintiff was never interviewed or selected for any of the positions.   Plaintiff testified that the failure to interview and/or select him must have been based on age and/or gender discrimination because it was statistically impossible for him to be less qualified than every single applicant for every single one of these positions. Exhibit B, DEF001167-DEF001170.   *See also* Exhibit A, DEF000872-DEF000875. Plaintiff further testified that he was not selected for any positions he applied for after September 2019 due to his termination.   *Id.*

B.    *Administrative Remedies*

On December 13, 2019, pursuant to the provisions of Plaintiff's Collective Bargaining Agreement, *see* Exhibit A, DEF000291-DEF000300, Plaintiff filed a union grievance with respect to his August 2018 interim performance appraisal, the

termination of his telework privileges, the January 2019 PIP, his September 23, 2019 termination, and his claims of hostile work environment/harassment and retaliation.   Exhibit A, DEF000113-DEF000127, DEF000255-DEF000269; Exhibit B, DEF001164-DEF001165.   On January 31, 2020, Regional Director Diana Graff issued a decision denying Plaintiff's grievance in its entirety.   Exhibit A, DEF000128-DEF000132, DEF000270-DEF000274.   It does not appear from the record that Plaintiff pursued any further steps in the grievance process, or that he appealed the grievance decision to the EEOC.   *See* Exhibit A, DEF000298 (section of the Collective Bargaining Agreement providing the sequential steps for formal grievances, including that arbitration is the next step after denial of a formal grievance).

On February 14, 2020, more than four months after his termination, Plaintiff contacted for the first time an EEO counselor with the DCAA, in which he alleged dozens of claims of discrimination, harassment, and retaliation.   *See* Exhibit A, DEF000008, DEF000039- DEF000042.[12]   Between February 14 and May 14, 2020, the

---

[12] As noted above, a system of federal regulations exists for federal employees to present claims of discrimination, harassment, and retaliation, including claims under Title VII and the ADEA.   *See* 29 C.F.R. § 1614.101 *et seq.*   These regulations require a federal employee with a discrimination complaint to contact an EEO counselor from the employing agency within 45 days of the "effective date" of the challenged action, in an effort to resolve the complaint informally.   *See* 42 U.S.C. § 2000e–16(b); 29 C.F.R. § 1614.105(a)(1).   The 45-day period can be extended when the employee shows "that he or she did not know and reasonably should not have [ ] known that the . . . personnel action occurred."   29 C.F.R. § 1614.105(a)(2).   An agency shall dismiss a complaint that fails to

EEO counselor investigated Plaintiff's claims, and Plaintiff engaged in informal counseling, mediation, and a grievance process, none of which were successful. *See, e.g.,* Exhibit A, DEF000025-DEF000076.   On May 14, 2020, Plaintiff was notified that all initial procedures had been completed, and that Plaintiff could file a formal EEO complaint.   *Id.*, DEF000143-DEF000146.

On May 22, 2020, Plaintiff filed his formal EEO complaint with the DCAA. The complaint listed 29 claims, each of which Plaintiff contended constituted discrimination and harassment based on his age and gender, and/or retaliation for his 2013 EEO activity in Ohio.   Exhibit A, DEF000009-DEF000013.   Claims 1-18 addressed 18 positions throughout the United States that Plaintiff applied for between 2017 and 2019, and for which he did not receive either an interview or a job offer.   *Id.*   Although Plaintiff applied for each of these positions online, he claimed he did not learn that he was not referred for any of them until January 15, 2020.   *Id.*   Claim 19 involved Plaintiff's application on December 24, 2019 for an auditor vacancy in Melbourne, Florida, position DCAA-20-HQ-10681248, for which he was also not interviewed or hired.   *Id.   See also id.*, DEF000030.   Claim 20

---

comply with the time limits in § 1614.105.   *Id.* § 1614.107(a)(2).   If informal attempts at resolution are unsuccessful, at the final counseling session the EEO counselor notifies the employee of the right to file a formal complaint with the agency.   *Id.* § 1614.105(d). Thereafter, the complaint can proceed through various stages, including agency investigation (29 C.F.R. § 1614.108), an appeal before an EEOC administrative judge (29 C.F.R. § 1614.109), and a final agency decision (29 C.F.R. § 1614.110).

involved Plaintiff's allegations that his supervisors prohibited him from submitting requests to the IT helpdesk between October 2017 and September 23, 2019.  *Id.*, DEF000010.   Claim 21 related to Plaintiff's allegations that Marn attempted to bully Plaintiff into retiring in October 2017.  *Id.*, DEF000011.   Claim 23 related to Plaintiff's allegations that Swarts assigned Plaintiff to an undesirable cubicle.  *Id.* Claims 22, 24-26 related to Plaintiff's August 2018 interim performance appraisal, the January 2019 PIP, and the July 29, 2019 Proposal to Remove.  *Id.*   In Claim 27, Plaintiff alleged that his termination was actually a constructive discharge.  *Id.* Claim 28 addressed the DCAA termination paperwork listing his status as removed instead of retired.  *Id.*   And Claim 29 related to the unfavorable decision from Diana Graff as to Plaintiff's union grievance.  *Id.*   In July 2020, Plaintiff added one additional claim (Claim 30) related to his allegations that the DCAA canceled his and his wife's health insurance following his termination.  *Id.*, DEF000022-DEF000023.

The DCAA acknowledged receipt of Plaintiff's EEO complaint on June 15, 2020, and assigned the complaint case number CE20-003.  *Id.*, DEF000148-DEF000155.   On July 31, 2020, the DCAA notified Plaintiff that it would partially accept Plaintiff's EEO complaint.  *Id.*, DEF000157-DEF000166.   Specifically, Claims 1-18 that related to Plaintiff's applications for various positions between 2017 and 2019 were dismissed as untimely because Plaintiff did not initiate contact

with a DCAA EEO counselor within 45 days of the discriminatory act (or the effective date of the discriminatory act).[13]  *Id.   See also* 29 C.F.R. § 1614.105(a)(1). The DCAA also dismissed seven (7) of the failure to hire/failure to interview claims for the alternative reason that the DCAA never ultimately filled those positions. Exhibit A, DEF000163.   And the DCAA dismissed Plaintiff's claims related to a hostile work environment based on extreme temperatures, his August 2018 interim performance appraisal, the January 2019 PIP, the July 29, 2019 Proposal for Removal, his September 23, 2019 termination, and the failure to provide Plaintiff with paperwork showing that he was retired as opposed to terminated, because Plaintiff had previously raised these claims in his December 13, 2019 union grievance.  *Id.*, DEF000164.   *See also* 29 C.F.R. § 1614.107(a)(4); 29 C.F.R. § 1614.301(a).   The DCAA also dismissed Plaintiff's claim that attempted to challenge the decision denying his union grievance as an improper collateral attack, explaining to Plaintiff that the proper forum to challenge the grievance process was within that proceeding itself.   Exhibit A, DEF000164.   Plaintiff's remaining claims, which related to the position in Melbourne that Plaintiff applied for on December 24, 2019, the alleged prohibition against submitting requests to the IT help desk,

---

[13] There are discrepancies between the number of Plaintiff's claims during the DCAA EEO process.   *Compare* Exhibit A, DEF000009-DEF000013, *with* Exhibit A, DEF00157-DEF000166.   The undersigned has done her best to clarify these discrepancies.

Marn's attempts to bully Plaintiff into retirement, and the DCAA's canceling of Plaintiff's and his wife's health insurance, were all permitted to go forward. Exhibit A, DEF000160.  *See also id.*, DEF0000926.

With respect to Plaintiff's Claim 27 – the claim of constructive discharge related to his September 23, 2019 separation from employment – the DCAA notified Plaintiff that this was a "mixed case complaint" which could be raised either in an EEO complaint or via an appeal to the Merit Systems Protection Board ("MSPB"). Exhibit A, DEF000054-DEF000056.  *See also* 29 C.F.R. § 1614.302(a)(1) (defining "mixed case complaint"); *Cash v. Shinseki*, No. 8:08-cv-743-T-MAP, 2009 WL 10670762, at *4 (M.D. Fla. June 12, 2009) (finding that forced resignation or constructive discharge claims filed by federal employees under both Title VII and the ADEA constitute a "mixed case complaint.").   Because Plaintiff chose to file this claim as an EEO complaint, the DCAA separated the constructive discharge claim into a separate EEO complaint, and assigned it case number CE20-006.   Exhibit A, DEF000159.   The July 31, 2020 letter further notified Plaintiff that he could not appeal the partial dismissal of his claims until the entire case was resolved.  *Id.*, DEF000165.

That same day, July 31, 2020, the DCAA by separate letter dismissed Plaintiff's constructive discharge mixed case complaint, case number CE20-006, as untimely.   Exhibit M.  *See also* Doc. No. 69-1 (titled "Exhibit R").   The letter of

dismissal provided that Plaintiff could appeal the decision within 30 days, or if Plaintiff chose not to appeal, he could file suit within 90 days.   *Id.*   *See* 29 C.F.R. § 1614.401.   Plaintiff appealed the dismissal to the Equal Employment Opportunity Commission Office of Federal Operations ("EEOC"), which the EEOC affirmed, and Plaintiff also moved for reconsideration, which the EEOC denied on March 10, 2021. *See* Doc. No. 69-2 (titled "Exhibit S").   In the decision denying reconsideration, the EEOC noted that Plaintiff had the right to file a civil action in an appropriate United States District Court within 90 days from the date of receipt of the decision.   *Id.*

In accordance with that information as it relates to case number CE20-006, Plaintiff filed the present lawsuit in this Court on June 14, 2021.   Doc. No. 1.   In the meantime, DCAA's formal investigation into the remaining claims under case number CE20-003 continued.   *See generally* Exhibit A.   The record provided by Defendant does not contain a final decision from the DCAA, but on or around September 17, 2021, Plaintiff filed an appeal with the EEOC related to case number CE20-003.   Exhibit N.   The record also does not clarify the issues and/or claims Plaintiff appealed with respect to case number CE20-003.   *Id.*

On May 18, 2022, prior to the conclusion of Plaintiff's appeal as to case number CE20-003, the DCAA filed with the EEOC a notice of related cases and request for order of dismissal of the EEOC's investigation and appeal of case

number CE20-003.   Exhibit O.[14]   According to the DCAA, Plaintiff's lawsuit in this Court – which Plaintiff filed after the EEOC's denial of reconsideration of the appeal in case number CE20-006 – terminated the EEOC's processing of the appeal of case number CE20-003.   *Id.*, DEF001679-DEF001680.   *See also* 29 C.F.R. § 1614.409 ("Filing a civil action under § 1614.407 or § 1614.408 shall terminate Commission processing of the appeal").[15]   Accordingly, on September 6, 2022, the EEOC dismissed the appeal of case number CE20-003 based on Plaintiff's filing of the present lawsuit.   Exhibit P.   The EEOC's order dismissing the appeal of case number CE20-003 was served on Plaintiff at the same email address he has provided in this case, and Plaintiff does not argue he did not receive the order.   However, the record does not reflect – and neither party clarifies in their motion papers – whether Plaintiff ever challenged the dismissal, whether Plaintiff sought any other relief before either the DCAA or the EEOC with respect to the claims alleged in case number CE20-003, or whether Plaintiff's administrative remedies as they pertain to case number CE20-003 have been fully exhausted.

---

[14] The notice mentions another EEOC complaint, case number HQ21-012, which appears to be pending in another district and is not a part of this lawsuit.   Exhibit O.

[15] 29 C.F.R. § 1614.407 authorizes civil actions for alleged violations of Title VII and the ADEA.

**IV.    ANALYSIS**

Before the undersigned can address the substantive merits of Plaintiff's claims there are two interrelated issues that must be addressed.   First, there is confusion as to the claims that actually form the basis of Plaintiff's complaint in this Court.   Second, Plaintiff disputes the admissibility of Defendant's evidence.   The undersigned addresses each in turn.

        A.    *The Scope of the Present Case*

There appears to be some confusion between the parties as to which claims and/or incidents actually form the basis of this action.   As noted above, Plaintiff filed a formal EEO complaint with the DCAA which ultimately alleged 30 separate claims.   The DCAA dismissed all but four (4) of Plaintiff's claims as either untimely or because Plaintiff had previously asserted these claims in his union grievance, and allowed those four remaining claims to go forward under case number CE20-003. Another claim – Plaintiff's allegation of constructive discharge – was separated into a different EEO complaint, case number CE20-006, and also dismissed as untimely.

In his opposition brief, it appears that Plaintiff is arguing that the present lawsuit is related solely to his claim of constructive discharge set forth in case number CE20-006, and that all of his claims in case number CE20-003 remain on appeal to the EEOC and thus are not part of the present case.   *See* Doc. No. 69, at 1-2, 7-8.   However, Plaintiff's appeal to the EEOC of case number CE20-003 was

dismissed on September 6, 2022, due to Plaintiff's filing of the present lawsuit. Exhibit P.   Plaintiff does not address the September 6, 2022 order of dismissal, nor does he contend he was unaware of the order.   And neither party explains whether Plaintiff's administrative remedies as to case number CE20-003 have been exhausted, or the extent to which the EEOC's order of dismissal impacts the present lawsuit.

Further complicating matters is that Plaintiff's second amended complaint – which was filed three months after the EEOC's order of dismissal – contains conflicting allegations.   Doc. No. 50.   Plaintiff's statement of facts mentions both case numbers CE20-003 and CE20-006, but only with respect to the fact that case number CE20-006 was separated from case number CE20-003.   Doc. No. 50-1, at 1. Plaintiff does not reference case number CE20-003 again in his pleading.   Doc. Nos. 50, 50-1.   Instead, Plaintiff goes on to allege that he was notified on March 15, 2021 that he had exhausted his administrative rights and could file a lawsuit in federal court, and Plaintiff attaches to his second amended complaint the EEOC's decision denying Plaintiff's request for reconsideration with respect to case number CE20-006.  Doc. No. 50-1, at 1, Doc. No. 50-2.   *See also* Doc. No. 50, at 5.   A fair and lenient reading of these allegations would suggest that Plaintiff has only filed suit here with respect to case number CE20-006, for which he exhausted his administrative remedies.

However, Plaintiff then states that the "facts of the separated case are shown below," and goes on to allege facts that relate to the claims that formed the basis of case number CE20-003, including claims that were dismissed as either untimely or brought under the union grievance process. *See* Doc. No. 50-1, at 1-2 (asserting facts related to the December 24, 2019 job vacancy, the prohibition against submitting requests to the IT help desk, Marn's attempts to bully Plaintiff to retire, the August 2018 performance appraisal, the reassignment to an undesirable cubicle, the January 2019 PIP, the July 2019 proposal to remove, the September 23, 2019 termination, the termination paperwork, the denial of the union grievance, and the canceling of Plaintiff's health insurance post-termination).  Plaintiff does not define the term "separate case," nor does Plaintiff allege that he exhausted his administrative remedies with respect to case number CE20-003.   The remainder of Plaintiff's second amended complaint provides no further clarity as it consists of a multitude of vague statements and legal conclusions regarding Title VII and ADEA discrimination, harassment, and retaliation.  *Id.*, at 2-10.

Defendant muddies the waters even further with his motion for summary judgment, which makes no attempt to clarify the scope of Plaintiff's case before this Court, but rather addresses every single claim Plaintiff raised in both case numbers CE20-003 and CE20-006, and argues for summary judgment both on procedural and substantive grounds as to all of them.   Doc. No. 67.   And in his response in

opposition, Plaintiff includes a verbatim recitation of the same statement of facts from his second amended complaint, which includes both the allegations concerning the exhaustion of administrative remedies as to case number CE20-006, and the factual allegations relating to case number CE20-003.   Doc. No. 69, at 6-7. Defendant chose not to file a reply, despite leave to do so, therefore the undersigned and the Court is left to decipher the confusing and contradictory filings.[16]

The undersigned has carefully reviewed the entire record of this case, including Plaintiff's second amended complaint and opposition brief, and finds, even under the most lenient reading afforded to a *pro se* litigant, that the only claim before this Court is a claim for constructive discharge.   The only administrative claim for which Plaintiff alleges he has exhausted his administrative remedies is the constructive discharge claim in case number CE20-006.   Doc. No. 50 at 5; Doc. No. 50-1, at 1.   And in his summary judgment opposition brief, Plaintiff details the procedural history of case number CE20-006, noting that the constructive discharge claim was dismissed as untimely on July 31, 2020, that he appealed that decision to the EEOC on August 25, 2020, that the EEOC affirmed the dismissal on November

---

[16] For example, Defendant nowhere argues that the dismissal of the EEOC appeal in case number CE20-003 automatically resulted in all of the claims in that case becoming part of the present lawsuit.   And while the undersigned has done Defendant's job for him by parsing through Defendant's voluminous exhibits, the undersigned will not go further and make legal arguments on behalf of Defendant.

18, 2020, and denied reconsideration on March 10, 2021.[17]   Doc. No. 69, at 1-2. Based on this procedural history, Plaintiff states that he "had exhausted his administrative options."   *Id.*, at 2.

But that is not all Plaintiff says.   Plaintiff next states that on March 10, 2021 the EEOC notified him of his right to sue, and that he filed the present lawsuit alleging constructive discharge, discrimination, and harassment under Title VII and the ADEA on June 14, 2021.   *Id.*   While this statement at first blush appears contradictory, the undersigned finds it critically relevant that Plaintiff goes on to clearly state that "[t]he DCAA CE20-006 was assigned case number 6:21-cv-1010 and was assigned to the Hon. Paul G. Byron, United States District Judge, which has been separated by DCAA from the Agency case No. DCAA-CE20-003. . . ."   *Id.* This clear statement is further supported by the next 3.5 pages of Plaintiff's opposition brief, in which he objects to all but one of Defendant's exhibits in support of summary judgment on the grounds that the exhibits relate to case number CE20-003, which Plaintiff asserts is still on appeal at the EEOC, and which is not part of the record of the present case.   *Id.*, at 2-5.   Plaintiff further represents that "no investigative report was performed for the present case DCAA Case-CE20-006 (6:21-cv-1010)," and therefore any exhibits that relate to case number CE20-003

---

[17] Plaintiff mistakenly lists the date as March 21, 2021.   Doc. No. 69, at 2.

should not be considered in ruling on summary judgment.   *Id.*   Moreover, at his deposition, Plaintiff testified that "[t]he case that's being filed in U.S. District Court . . . the major claim is constructive discharge.   That's over arching and all other claims that I have filed related to that."   Exhibit B, DEF001136.

When the undersigned considers Plaintiff's allegations from his second amended complaint – which only address exhaustion of administrative remedies as to case number CE20-006 – in conjunction with Plaintiff's representations from his opposition brief and deposition testimony, and in the absence of any explanation or argument to the contrary from Defendant, there can be no other interpretation than Plaintiff has only asserted a lone claim for constructive discharge in this case.   *Cf. GJR Investments, Inc.*, 132 F.3d at 1369 ("Courts do and should show a lenience to *pro se* litigants not enjoyed by those with the benefit of a legal education.   Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action. . . ." (citations omitted)); *Marshick v. Johnson & Johnson*, No. 5:14-cv-498-Oc-22PRL, 2015 WL 9266955, at *3 (M.D. Fla. Dec. 11, 2015) (noting, in summary judgment context, that "[t]he Court is under no obligation to rewrite a pleading for a *pro se* party." (citing *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006))).   While Plaintiff mentions discrimination, harassment and retaliation in his pleadings, he does not address them in his opposition brief – he makes no

attempt to show that he has satisfied any of the elements of any of his Title VII and/or ADEA claims – and he repeatedly and unequivocally states that the present case only concerns his EEO complaint in case number CE20-006, which asserts a single claim of constructive discharge.   It appears to the undersigned that Plaintiff may be confused by the convoluted administrative history of this case – a confusion that the undersigned can understand as the record is tortured at best – and that Plaintiff's allegations that relate to any other incidents are to support and/or establish his constructive discharge claim.   Accordingly, the undersigned recommends that the Court also find that Plaintiff's case solely involves a single claim for constructive discharge.[18]

  B. *Evidentiary Submissions by Defendant*

  The undersigned next addresses Plaintiff's objections to Defendant's exhibits filed in support of summary judgment.   Defendant has submitted 17 exhibits in

---

[18] In the event the Court disagrees with the undersigned's reading of Plaintiff's pleadings and motion papers and finds that Plaintiff has sufficiently asserted claims in this case for hostile work environment, discrimination, and retaliation under both Title VII and the ADEA, the undersigned respectfully suggests that Plaintiff has abandoned these claims, given Plaintiff's representations in his opposition brief and the absence of any argument in support of these claims.   And in light of the confusing nature of the record in this case, as well as the lack of any clarity from either side, and in an abundance of caution, and without speaking to the merits of any such claims, the undersigned would further recommend that the Court dismiss these additional claims without prejudice.   If the Court further disagrees with this alternative recommendation, the undersigned also respectfully suggests that the case be referred back to the undersigned for further briefing and analysis of the additional claims.

total, 13 of which are comprised of the DCAA investigation file for case CE20-003, Plaintiff's deposition, portions of Plaintiff's personnel file and communications between Plaintiff and his supervisors and others at the DCAA, and the various decisions and notices related to Plaintiff's union grievance and EEO and EEOC activity.   Exhibits A-E, J-Q.   *See also* Doc. No. 67, at 25-26.   The four (4) remaining exhibits are Declarations from Angela Moomond, Michelle Ramsey, Norman Swarts, and Allison Adams.   Exhibits F-I.

In his opposition brief, Plaintiff lodges objections to all exhibits but his deposition.   Doc. No. 69, at 2-5.   First, Plaintiff objects on the basis that the exhibits are "not part of the record for the present case," but rather all relate to case number CE20-003.   *Id.*   Although the undersigned agrees with Plaintiff that case number CE20-003 is not at issue in the present litigation, the undersigned finds that the exhibits submitted by Defendant are relevant to the issues before the Court, in particular the exhibits relating to the exhaustion of Plaintiff's administrative remedies and his claim of constructive discharge (and Plaintiff has himself submitted two of the same exhibits along with his opposition brief).   Moreover, "[t]he general rule regarding the admissibility of evidence on a motion for summary judgment is that the court may consider evidence that could be reduced to admissible evidence at trial."   *Guijosa-Silva v. Wendell Roberson Farms, Inc.*, No. 7:10-CV-17 HL, 2012 WL 860394, at *3 (M.D. Ga. Mar. 13, 2012) (citing *Macuba v. Deboer*,

193 F.3d 1316, 1322 (11th Cir. 1999)).   Upon review, these exhibits all contain evidence that can be reduced to admissible form at trial, and Plaintiff has provided no argument to the contrary.   Thus, the undersigned will recommend that Plaintiff's objections that the exhibits are "not part of the record for the present case," be overruled.

Second, Plaintiff objects to the four declarations from his supervisors on the grounds that they were prepared after the close of discovery, and "do not show that the declarant is competent to testify on the matters stated."   Doc. No. 69, at 3-4. Plaintiff cites no legal authority in support of this conclusory objection, and it is unpersuasive.   Federal Rule of Civil Procedure 56 expressly contemplates the submission of declarations in support of summary judgment.   Fed. R. Civ. P. 56(c)(1)(A) (stating that a party must support an assertion that a fact is not in genuine dispute by citing to the materials in the record, which include "affidavits or declarations").   There is "nothing in the Rule suggest[ing] that the affidavits or declarations themselves have to have been produced in discovery in order to be considered in support of or in opposition to a motion for summary judgment." *Benoit v. City of Lake City, Fla.*, 343 F. Supp. 3d 1219, 1224 (M.D. Fla. 2018).   *See also Pods Enters., Inc. v. U-Haul Int'l, Inc.*, No. 8:12-cv-01479-T-27-MAP, 2014 WL 12630066, at *1 (M.D. Fla. June 18, 2014) ("The Federal Rules of Civil Procedure do not require a party to supply an opponent with the affidavits it intends to rely on in

opposition to a motion for summary judgment.); *Woods v. Austal, U.S.A., LLC*, Civil Action No. 09-0699-WS-N, 2011 WL 1380054, at *2 (S.D. Ala. Apr. 11, 2011) ("[P]laintiff identifies no authority for the proposition that he was entitled to a 'free preview' of defendants summary judgment witness declarations before the close of discovery. . . .   Nor is there any rule or legal principle mandating that declarations be stricken from a summary judgment record unless they were prepared, executed and produced to opposing counsel before the close of discovery.").   Rather, Rule 56(c)(4) requires only that affidavits and declarations be made on personal knowledge, set forth facts that would be admissible at trial, and show that the affiant is competent to testify to these matters.

A review of the four declarations readily demonstrates that Rule 56(c)(4) is satisfied.   It is clear that each declaration is based on personal knowledge and that each declarant was competent to testify on the matters asserted; the declarants were supervisors of Plaintiff during the relevant time period and were involved in the issues that form of the basis of Plaintiff's constructive discharge claim.   Moreover, the declarations comply with the requirements of 28 U.S.C. § 1746, and "[u]nder 28 U.S.C. § 1746(2), any rule that requires an affidavit, such as Rule 56[c], can be satisfied by an unsworn declaration as long as it was made under penalty of perjury."   *Scaff-Martinez v. Fed. Bureau of Prisons*, 160 F. App'x 955, 957 (11th Cir. 2005).   *See also Swilley v. Pope*, No. 2:18-CV-27, 2021 WL 3503394, at *2 (S.D. Ga. July

15, 2021), *report and recommendation adopted*, 2021 WL 3502250, at *2 (S.D. Ga. Aug. 9, 2021) (overruling objections to declaration submitted in support of summary judgment where it was clear that it was made on personal knowledge, that declarant was competent to testify on the matters, and the declaration satisfied the requirements of 28 U.S.C. § 1746).   Plaintiff also would be hard pressed to argue surprise, given that the declarations are made by Plaintiff's supervisors, each of whom were named in Plaintiff's underlying EEO activity.   *See also* Exhibit B, DEF001153.   *Cf. Brown v. Chertoff*, No. 406CV002, 2009 WL 50163, at *5–6 (S.D. Ga. Jan. 7, 2009) (denying motion to strike declarations filed after the close of discovery with summary judgment pleadings because plaintiff became aware of the witnesses during discovery and could have deposed them).   Accordingly, the undersigned will also recommend that these objections be overruled.

C.    *The Constructive Discharge Claim*

Turning now to the substantive merits, Plaintiff prefaces his constructive discharge claim on his September 23, 2019 termination by Moomand.   *See, e.g.*, Doc. No. 50-1, at 2, 4, 5, 8.   *See also* Exhibit M, DEF001659 (noting Plaintiff's claim of constructive discharge in case number CE20-006 relates to his September 23, 2019 termination).   Defendant argues that Plaintiff's constructive discharge claim is procedurally barred because Plaintiff did not initiate the EEO process within the

required time limits, and therefore summary judgment should be granted in his favor.   Doc. No. 67, at 10-11.   Upon review, the undersigned agrees.

As a prerequisite to filing a civil complaint of discrimination under either Title VII or the ADEA, federal employees, including employees of the DCAA, must proceed with and exhaust the administrative remedies set forth in 29 C.F.R. Part 1614.[19]   *See* 29 C.F.R. § 1614.103; *Brown v. Snow*, 440 F.3d 1259, 1262 (11th Cir. 2006), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).   The federal employee must first "initiate administrative review of any alleged discriminatory or retaliatory conduct with the appropriate agency within 45 days of the alleged discriminatory act."   *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008) (per curiam).   *See also* 29 C.F.R. § 1614.105(a)(1).   This 45-day period can be extended "when the individual shows . . . that he or she did not know and reasonably should not have . . . known that the . . . personnel action occurred." 29 C.F.R. § 1614.105(a)(2).   "[T]he 45-day time limit is not jurisdictional; rather, it functions like a statute of limitations, and, like a statute of limitations, it is subject to waiver, estoppel, and equitable tolling."   *Ramirez v. Sec'y, U.S. Dep't of Transp.*,

---

[19] Both Title VII and the ADEA are applicable to federal employees, including Plaintiff.   *See* 42 U.S.C. § 2000e-16(a) (stating that Title VII applies to employees and applicants for employment of executive agencies defined in 5 U.S.C. § 105), 29 U.S.C. § 633a(a) (stating same with respect to the ADEA); 5 U.S.C. § 105 (defining "executive agencies" as "an Executive Department, a Government corporation, and an independent establishment"); 5 U.S.C. § 101 (identifying the Department of Defense as an "Executive department").

686 F.3d 1239, 1243 (11th Cir. 2012) (quotation marks, citation, and alteration omitted).   *See also Manning v. Carlin*, 786 F.2d 1108, 1109 (11th Cir. 1986).   A federal employee's failure to adhere to the administrative requirements is grounds for granting summary judgment against the employee.   *See Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999) ("A federal employee must pursue and exhaust her administrative remedies as a jurisdictional prerequisite to filing a Title VII action."); *Johnson v. Bergland*, 614 F.2d 415, 416-18 (5th Cir. 1980) (affirming district court's grant of summary judgment on failure to exhaust grounds); *Swain v. Hoffman*, 547 F.2d 921, 922 (5th Cir. 1977) (holding that the district court properly granted summary judgment against certain federal employee plaintiffs for failure to exhaust their administrative remedies); *Hay v. Sec'y of Army*, 739 F. Supp. 609, 611-12 (S.D. Ga. 1990) (granting summary judgment because plaintiff failed to exhaust administrative remedies).

Here, Plaintiff alleges that his constructive discharge took place when Moomand terminated his employment on September 23, 2019.   *See* Doc. No. 50-1, at 4, 8.   *See also* Exhibit M, DEF001659 (listing Plaintiff's formal complaint in case number CE20-006 as Moomand constructively discharging Plaintiff on September 23, 2019).   The termination became effective on that date, thus to have satisfied the administrative prerequisites, Plaintiff would have had to initiate contact with an EEO counselor on or around November 7, 2019 – 45 days after his termination.   29

C.F.R. § 1614.105(a)(1).   But Plaintiff admittedly did not contact an EEO counselor until February 14, 2020, and Plaintiff did not raise a claim of constructive discharge with the EEO until May 12, 2020.   *See, e.g.*, Exhibit M, DEF001659-DEF001660. Thus, Plaintiff failed to timely exhaust his administrative remedies.

Plaintiff does not address this timeliness argument in his opposition brief, does not argue that he was unaware of the 45-day deadline to initiate EEO contact, does not argue that he was unaware that he had been constructively discharged, does not argue that the DCAA waived this 45-day period, and does not argue that he was prevented from contacting an EEO counselor prior to February 14, 2020. Doc. No. 69.   *See also* 29 C.F.R. § 1614.105(a)(2).   Nor has Plaintiff provided any evidence to refute any of the argument or submissions from Defendant.   And in the absence of any such argument and evidence in support, Plaintiff's constructive discharge claim is time barred.   *See Melton v. Holder*, No. 2:12-CV-2099-AKK, 2013 WL 458567, at *4 (N.D. Ala. Jan. 31, 2013) (noting that "[i]t would require the suspension of disbelief" to find that a federal employee was not aware that he had been constructively discharged until two years after the fact "since the premise of a constructive discharge claim is that the working conditions are 'so intolerable' that a reasonable person in [the same position] had no choice except to resign," therefore the employee must have known about the purported intolerable working

conditions at the time of resignation (citing *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003))).

However, during the EEO process, Plaintiff admitted that he was aware he was terminated and/or constructively discharged on September 23, 2019, but argued that he was not aware that he could file a claim for constructive discharge until months after his termination.   Exhibit M, DEF001659-DEF001660.   Plaintiff does not reassert this argument in opposition to summary judgment (or raise any other argument that would justify tolling), therefore the undersigned finds it waived, and even if he had raised this argument, the undersigned finds it unpersuasive.   *See Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992) (holding that the time for contacting an EEO counselor began to run at the time of the alleged discriminatory employment action:   "To allow plaintiffs to raise employment discrimination claims whenever they begin to suspect that their employers had illicit motives would effectively eviscerate the time limits prescribed for filing such complaints."); *Tarmas v. Mabus*, No. 3:07-cv-290-J-32TEM, 2010 WL 3746636, at *5 (M.D. Fla. Sept. 21, 2010), *aff'd sub nom. Tarmas v. Sec'y of Navy*, 433 F. App'x 754 (11th Cir. 2011) (rejecting attempt to equitably toll the 45-day period based on argument that federal employee was "reasonably unaware" that his employer's actions legally constituted acts of disability discrimination until well outside the 45-day time period because "[t]he time limits for filing claims of employment

discrimination generally begin to run when the act occurs, not when the employee first perceives that a discriminatory motive caused the act." (citation and quotation marks omitted)); *Jackson v. Barnhart*, No. 1:05-CV-2979-WSD, 2006 WL 2466810, at *2 (N.D. Ga. Aug. 24, 2006) (rejecting federal employee's argument that the triggering event for contacting an EEO counselor was the employee's discovery of an alleged discriminatory motive for the adverse employment action, rather "[t]he relevant legal authority uniformly holds that the time period for contacting the EEO counselor begins to run from the date of the discrete employment action alleged to be discriminatory, not from the date of discovery of improper motivation." (citation, quotation marks, and alteration omitted)); *Hogan v. U.S. Dep't of Veterans Affs.*, No. Civ.A. 99-868, 1999 WL 1138529, at *7-8 (E.D. La. Dec. 7, 1999) (rejecting plaintiff's argument that the time for contacting an EEO counselor began to run when plaintiff was told a similarly situated employee had been treated differently and he realized his discharge was discriminatory).

Further, the undersigned finds that Plaintiff was aware of the 45-day deadline. The September 23, 2019 notice of removal, which Plaintiff was provided, clearly sets forth all of Plaintiff's administrative remedy options, and in particular states that if Plaintiff wishes to pursue a complaint of discrimination, he must request EEO counseling within 45 days of the effective date of any adverse action. Exhibit A, DEF00094. *See also id.*, DEF00092-DEF00098; DEF000113; DEF000175.

Plaintiff would also be hard pressed to argue ignorance of this time period given his numerous prior EEO complaints of discrimination.   *See, e.g.*, Exhibit M, DEF001660; Exhibit A, DEF000347-DEF000507; Exhibit B, DEF001092, DEF0001097, DEF001119-DEF001120.   *See also Melton*, 2013 WL 458567, at *5 (dismissing federal employee's claim of constructive discharge for failure to satisfy the 45-day administrative prerequisite, and declining to apply equitable tolling where it was clear that the employee was aware of the 45-day period, and had previously filed an EEO Complaint in a timely manner).   Again, Plaintiff does not argue otherwise.

In sum, because Plaintiff admittedly did not initiate contact with a DCAA EEO counselor with respect to a claim of constructive discharge until after the 45-day time period had expired, Plaintiff failed to exhaust his administrative remedies. As such, his constructive discharge claim is procedurally barred, and the undersigned will recommend that summary judgment be granted in Defendant's favor.   *See, e.g., Brady v. Postmaster Gen., U.S. Postal Serv.*, 521 F. App'x 914, 917 (11th Cir. 2013) (affirming dismissal of *pro se* plaintiff's Title VII, ADEA, and ADA claims where employee did not contact EEO counselor within 45 days of the effective date of her termination); *Gaillard v. Shinseki*, 349 F. App'x 391, 392-93 (11th Cir. 2009) (affirming grant of summary judgment in favor of defendant and finding disability discrimination claim time barred where federal employee did not contact an EEO counselor until more than 15 months after his termination, provided no evidence

that he did not have at least constructive notice of the 45-day time limit, and gave no excuse for failing to contact an EEO counselor within 45 days of his termination); *Thomas v. Miami Veterans Med. Ctr.*, 290 F. App'x 317, 318-19 (11th Cir. 2008) (affirming summary judgment on Title VII hostile work environment claim where employee did not contact EEO counselor within 45 days of the date the supervisor allegedly made a racial comment); *Melton*, 2013 WL 458567, at *4-5 (dismissing federal employee's constructive discharge claim as time barred where employee did not contact EEO counselor until two years after resignation); *Tarmas*, 2010 WL 3746636, at *5 (granting summary judgment on several disability discrimination claims as time barred for failure to contact EEO counselor within 45 days of each discrete act); *Jackson*, 2006 WL 2466810, at *3 (dismissing with prejudice claim of discrimination where federal employee was aware of the adverse employment action at the time it occurred, but did not contact an EEO counselor until three years later when she alleged discovered the action was motivated by discriminatory animus).[20]

---

[20] Even if Plaintiff had demonstrated that the 45-day time limit should be equitably tolled, the undersigned finds that his constructive discharge claim fails for another reason. Under Title VII, "[a] constructive discharge occurs when a discriminatory employer imposes working conditions that are 'so intolerable that a reasonable person in [the employee's] position would have been compelled to resign.'" *Beltrami v. Special Couns., Inc.*, 170 F. App'x 61, 62 (11th Cir. 2006) (quoting *Fitz v. Pugmire Lincoln–Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003)). The same standard applies to claims of constructive discharge under the ADEA. *See Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997) ("To successfully claim constructive discharge, a plaintiff must

demonstrate that working conditions were 'so intolerable that a reasonable person in her position would have been compelled to resign.'" (quoting *Thomas v. Dillard Dep't Stores, Inc.*, 116 F.3d 1432, 1433–34 (11th Cir. 1997))).   Here, Plaintiff does not allege that he resigned, quite the contrary, he alleges and acknowledges that his employment was terminated, and he attempted to seek relief before the EEO, the EEOC, and his union as to his termination.   While Plaintiff was given the opportunity to retire in lieu of termination, he rejected that offer.   Exhibit A, DEF000099.   *See also* Exhibit B, DEF001145 (acknowledging that Plaintiff was discharged for poor performance and did not resign). Because Plaintiff did not resign, he cannot establish a claim of constructive termination. *See Hannah v. Aspire Physical Recovery Ctr. of W. Alabama, LLC*, No. 7:17-CV-01016-JHE, 2017 WL 5161995, at \*3 (N.D. Ala. Nov. 7, 2017) (dismissing constructive discharge claim where plaintiff alleged he was "wrongfully terminated" because one "cannot state a claim for 'constructive termination' and allege he was actually terminated.").   *See also* Exhibit B, DEF001137 (Plaintiff testifying at deposition that "constructive discharge" means "that the Agency and its management constructed basically discriminatory acts, acts of reprisal, acts of retaliation, against me over a period of time . . . . They just built up a case with as much negative information and false information that the possibly could.   And then they discharged me."), *id.*, DEF001143-DEF001144 (reiterating that the DCAA "buil[t] a case to discharge me from the Agency.   That's what I consider constructive discharge.").

Finally, to the extent that Plaintiff's constructive discharge claim is really another attempt to assert a claim for wrongful termination (a finding the undersigned does not make), Defendant would also be entitled to summary judgment on that claim, because Plaintiff raised a wrongful termination claim as part of his union grievance.   *See* Doc. No. 67, at 11-13.   And there is nothing before the Court establishing that Plaintiff completed the grievance process, which is an administrative prerequisite before pursuing litigation. *See* Exhibit A, DEF000300 (section of Collective Bargaining Agreement stating that an employee who has been subject to discrimination can either file an EEO complaint, or file a union grievance, but not both); *id.*, DEF000113-DEF000127 (Plaintiff's union grievance, which challenges his September 23, 2019 termination as "not a correct decision"); *id.*, DEF000128-DEF000132 (January 31, 2020 decision denying Plaintiff's union grievance and finding that his termination was appropriate); *id.*, DEF000298 (providing the sequential steps under the Collective Bargaining Agreement for union grievances, and stating that the next step after a denial is arbitration).   *See also Nixon v. Saul*, No. 2:19-CV-01012-RDP, 2020 WL 4260603, at \*5 (N.D. Ala. July 24, 2020) (dismissing discrimination claims that were previously asserted as part of a union grievance process where plaintiff failed to complete the union grievance process before filing suit); *Mohr v. Esper*, No. 5:18-cv-01628-HNJ, 2019 WL 8014316, at \* (N.D. Ala. Aug. 19, 2019) (dismissing Title VII retaliation claim first brought under negotiated union grievance process where plaintiff failed to exhaust the process prior to filing a lawsuit in federal court).

## V.      RECOMMENDATION

For the reasons set forth above, the undersigned **RESPECTFULLY RECOMMENDS** as follows:

(1)      **FIND** that Plaintiff's claims in the present case are limited to a lone claim of constructive discharge;

(2)      **GRANT** Defendant's Motion for Summary Judgment (Doc. No. 67) as to that claim on the basis that Plaintiff failed to exhaust his administrative remedies, and **DENY** Defendant's Motion (Doc. No. 67) as to all other grounds;

(3)      In the alternative, **FIND** that Plaintiff has raised additional claims of Title VII and ADEA hostile work environment discrimination, discrimination, and retaliation, and **DISMISS WITHOUT PREJUDICE** these additional claims; and

(4)      Enter judgment in favor of Defendant and against Plaintiff accordingly, terminate any other pending motions, and close the file.

### <u>NOTICE TO PARTIES</u>

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions.  Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  11th Cir. R. 3-1.

Recommended in Orlando, Florida on July 27, 2023.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy